IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| REBECCA and WILLIER B., Individually and on behalf of their minor child, CAITLIN B., <br><br>              Plaintiffs, <br><br>     v. <br><br> STATE OF HAWAII, DEPARTMENT OF EDUCATION and PAT HAMAMOTO, in her official capacity as Superintendent of Hawaii Public Schools, <br><br>              Defendants. | Civ. No. 05-00498 ACK/KSC |

### ORDER DENYING PLAINTIFFS' APPEAL OF THE HEARINGS OFFICER'S ADMINISTRATIVE DECISION

### BACKGROUND

**I.   Procedural Background**

Rebecca and Willier B., individually and on behalf of their minor child, Caitlin B. (collectively "Plaintiffs"), have sued the State of Hawaii, Department of Education and Pat Hamamoto, in her official capacity as Superintendent of the Hawaii Public Schools ("Defendants"), for denying Caitlin B. the free and appropriate public education ("FAPE") to which she was allegedly entitled.  Plaintiffs assert that Caitlin B., who was certified as a special education student, is entitled to a FAPE

1

pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401, et seq., and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

The IDEA was enacted by Congress to, among other things, "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs . . . [and] to ensure that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400(d)(1)(A) and (B) (1999). The IDEA provides federal money to state and local education agencies to assist them in educating disabled children, on the condition that the state and local agencies implement the substantive and procedural requirements of the IDEA. See Robb v. Bethel School District #403, 308 F.3d 1047, 1049 (9th Cir. 2002). The IDEA provides procedural safeguards to permit parental involvement in all matters concerning the child's educational program, including an opportunity for an impartial due process hearing with respect to complaints, and allows parents to obtain administrative and judicial review of decisions they deem unsatisfactory or inappropriate. Id.

On March 3, 2005, Plaintiffs commenced the complaint process by requesting an administrative hearing with the Department of Education, pursuant to the IDEA. The

administrative process commenced on April 11, 2005 and concluded on May 25, 2005.  The administrative proceedings culminated in the Hearings Officer's issuance of Findings of Fact, Conclusions of Law and Decision on July 5, 2005 (the "Administrative Decision").

Dissatisfied with the conclusions of the Hearings Officer, Plaintiffs filed suit in this Court pursuant to 20 U.S.C. § 1415(i)(2)(A) on August 4, 2005.  Defendants, who allege that they were not served with Plaintiffs' Complaint and Summons until October 4, 2005, filed an Answer on October 7, 2005.

On October 24, 2005, each party submitted a scheduling conference statement.  On October 31, 2005, Magistrate Judge Chang held the Rule 16 scheduling conference.  At that time, the court established the following briefing schedule: Plaintiffs' Opening Brief was due January 31, 2006; Defendants' Memorandum in Opposition was due March 31, 2006; and Plaintiffs' Reply was due May 1, 2006.  Finally, the hearing on the appeal was set before this Court on June 5, 2006.

Plaintiffs did not file an Opening Brief by January 31, 2006.  Nevertheless, Defendants filed a Responsive Brief by the March 31, 2006 deadline.  Plaintiffs also neglected to file a Reply by the May 1, 2006 deadline.  The Court received the Administrative Record on Appeal on March 2, 2006.

Defendants moved to dismiss Plaintiffs' Complaint on

May 3, 2006 for failure to prosecute their claims.  After a hearing on May 15, 2006, the Court denied Defendants' Motion to Dismiss and reset the briefing schedule despite Plaintiffs' dilatory handling of the case.  Pursuant to the Court's May 16, 2006 Order, Plaintiffs filed their Opening Brief on May 26, 2006.  Defendants filed a Second Responsive Brief on June 8, 2006.  Plaintiffs did not file a Reply Brief.  The Court held oral arguments on the appeal on June 19, 2006.

**II.   The Administrative Decision**

The Hearings Officer made detailed findings of fact in the Administrative Decision.  As set forth in the Administrative Decision, the Hearings Officer found and concluded that the Defendants provided a FAPE pursuant to the September 18, 2003 IEP to Caitlin B. ("Student"), and Plaintiffs are not entitled to reimbursement for the current private school placement. (Administrative Decision at 7).

The Hearings Officer found that Student has a hearing impairment and is qualified to receive special education services.  Student's Individualized Education Program ("IEP") team convened with Rebecca B. ("Mother") and Willier B. ("Father") (collectively "Parents") on September 18, 2003.  At that time, Student's IEP was created, which contains goals and objectives for Student's academic progress, but does not address the subject of mathematics.  On the final page of the IEP, there

is a handwritten, signed statement by Parents indicating that they agreed with the IEP. (Administrative Record, Respondent's Exhibit 2 at CB 25). Mother testified that she raised concerns about the IEP at the meeting, but there is no indication of her concerns contained in the IEP.

Prior to the IEP meeting, Student tested below grade level on the KeyMath test. (Administrative Decision at 6). However, the evidence showed that Student performed at her approximate grade level in all subjects, and her teachers testified that she did well in her regular education classes. Hearings Officer specifically noted that the IEP was designed to address Student's hearing impairment, which qualifies her for special education services. Id. Student successfully completed the 6th grade at the end of the 2003-2004 school year with passing grades.

Parents subsequently enrolled Student in a private school in June 2004. In July 2004, Wendy Chong, Student Services Coordinator at Waipahu Intermediate School, contacted Parents and left a message inquiring about Student's placement for the 2004-2005 year. (Administrative Record, Hearing Transcript at 144:11-18). On August 1, 2004, Mother left a message with Chong that informed the DOE for the first time that Student would not be returning to public school for the 2004-2005 school year. On August 6, 2004, Randall Dunn, Principal of Waipahu Intermediate

School, notified Parents by letter that the DOE considered Parents' placement of their child to be unilateral and that Student would not receive additional special education services. (Administrative Record, Respondent's Exhibit 9 at CB 38). Plaintiffs never provided written notice to the DOE of Student's new placement, nor did they respond to Dunn's letter. (Administrative Decision at 4).

Ultimately, the Hearings Officer concluded that the DOE provided Student with a FAPE designed to address her unique needs. Id. at 6.  Furthermore, he determined that Parents failed to provide written notice of Student's new academic placement as required by Hawaii Administrative Rule § 8-56-51(d)(1).  Id. at 7.  Accordingly, the Hearings Officer denied Plaintiffs' request for reimbursement for Student's private school placement.

## STANDARD

In evaluating an appeal of an administrative decision under the IDEA, the district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C).[1]

---

[1] An amendment to the IDEA, effective July 1, 2005, affected the subsection number at which this provision appears in the
**(Cont.)**

This statutory requirement "that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." See Board of Educ. of the Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley, 458 U.S. 176, 206 (1982). Rather, "due weight" must be given to the findings in the administrative proceedings. Id.

The amount of deference given to an administrative hearing officer's findings is a matter of discretion for the court. See Capistrano Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 891 (9th Cir. 1995) (quoting Gregory K. v. Longview Sch. Dist., 811 F.2d 1307, 1311 (9th Cir. 1987)). The court must consider the findings carefully and endeavor to respond to the hearing officer's resolution of each material issue, but the court is free to accept or reject the findings in part or in whole. See Capistrano, 59 F.3d at 891. When exercising its discretion to determine what weight to give the hearing officer's findings, the court may examine the thoroughness of those findings and accord greater deference when the findings are "thorough and careful." Id.; Union Sch. Dist. v. Smith, 15 F.3d

---

statute, but did not affect the text of the provision. Compare 20 U.S.C. § 1415(i)(2)(B) (in effect prior to July 1, 2005) with 20 U.S.C. § 1415(i)(2)(C) (effective July 1, 2005). Thus, the Court's analysis on this issue is identical under either version of the statute.

1519, 1524 (9th Cir. 1994).

A court's inquiry in reviewing administrative decisions under the IDEA is twofold.  "First, has the State complied with the procedures set forth in the Act?  And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?  If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more."  Rowley, 458 U.S. at 206-207 (internal footnotes omitted); see also Smith, 15 F.3d at 1524.

## DISCUSSION

### I.  The DOE Provided a FAPE to Student

Plaintiffs contend that Defendants failed to provide a FAPE to Student because she had obvious deficiencies in mathematics that her IEP failed to address.  Plaintiffs rely primarily on the results of the KeyMath assessment administered by Special Education Teacher Shari Suzuki on August 21, 2003.  (Administrative Record, Respondent's Exhibit 1 at CB 1).  At the time, Student was 11 years old and just beginning the 6th grade.[2]  The test reveals some inadequacies in Student's mathematical abilities.  Student performed at a 4.9 grade level and the age

---

[2] Plaintiffs' Opening Brief claims that Student was in the 7th grade at the time of the test, but this statement is refuted by all of the other evidence.  (See Opening Brief at 5).  The Court assumes that Plaintiffs' statement is merely a typographical error.

8

equivalent of a person who was 10 years and 5 months old.  Id.
Student's performance placed her in the 39th percentile of test-takers.  In addition to the KeyMath assessment, Plaintiffs offer evidence that the private school's assessment of Student revealed that she had the math skills of a 3rd/4th grade student at the beginning of the 2004-2005 school year.[3]  (Administrative Record, Petitioners' Exhibit 7 at 58).

      Plaintiffs assert that Defendants failed in their responsibility to address all of Student's educational deficits.  See 34 C.F.R. § 300.347(a)(2).  Parents attended the September 18, 2003 IEP conference, where Mother claims she raised concerns about Student's academic progress.  (Administrative Decision at 4).  Special Education Teacher Shari Suzuki stated that Mother may have asked questions at the IEP meeting, but the team addressed all of her concerns.  (Administrative Record, Hearing Transcript at 57:22-58:18).  For this reason, the IEP was finalized without any notation regarding Mother's concerns.  Parents signed the IEP at the end of the meeting next to the following statement: "I agree with this IEP at this time."  (Administrative Record, Respondent's Exhibit 2 at CB 25).

      The IEP addresses Student's needs resulting from her

---

[3] Despite this initial assessment, Student earned a B+ in math in the first two semesters of the seventh grade at her new private school placement.  (Administrative Record, Petitioners' Exhibit 7 at 60).

hearing loss and deficiencies in Language Arts, but there is no mention of special education services for math. (Administrative Record, Respondent's Exhibit 2). However, Student's academic records and the testimony of her teachers indicate that Student did not require additional services in this subject matter.

Student passed her math class in both the fifth and sixth grade with average marks. (Administrative Record, Respondent's Exhibits 7-8 (Student received a C+ in fifth grade and a B- in 6th grade)). Suzuki testified that Student's KeyMath assessment scores fell within the "average range." (Administrative Record, Hearing Transcript at 49:16). Moreover, teachers do not rely solely on standardized assessments, but also consider the performance of the student in the classroom. (Administrative Record, Hearing Transcript at 88:10-88:25). According to Suzuki, Student had no significant deficiencies and she was very successful in the general education classroom. (Administrative Record, Hearing Transcript at 49:17-50:14). Suzuki also testified that there was no indication that Student was performing below grade level in the classroom. (Administrative Record, Hearing Transcript at 54:23-55:1). Roxanne Chong, Student's regular math teacher, echoed Suzuki's testimony, stating that Student did as well as the other regular education students in the math class. (Administrative Record, Hearing Transcript at 94:12-94:24).

As stated, it is not a court's role to inject its own notions of sound educational policy into the review of an administrative hearing.  Rowley, 458 U.S. at 206.  The testimony of the regular education teacher and special education teacher, individuals that worked with and observed Student on a daily basis for the entire 2003-2004 academic year, is consistent with the original IEP.  Parents attended the IEP meeting and indicated that they were in agreement with Student's program.  The KeyMath assessment may have revealed some inadequacies in Student's mathematical abilities, but the results were not outside the range of an average student.  Student performed at an acceptable level in math, and she passed the sixth grade year without the aid of special education services.  Rowley, 458 U.S. at 204 (The IEP "should be reasonably calculated to enable the child to achieve passing marks and advance from grade to grade.").  For the foregoing reasons, the Court concludes that the Hearings Officer did not err when he concluded that Defendants provided a FAPE for Student despite the fact that the IEP does not address her mathematical abilities.

## II.  **Plaintiffs are not Entitled to Reimbursement**

"Parents who unilaterally 'enroll their child in private school without the approval of the public school district do so with the risk they will not receive reimbursement for their costs.'"  T.F. v. Special School Dist. of St. Louis County, 2006

WL 1506701 at *2 (8th Cir. 2006) (quoting Fort Zumwalt Sch. Dist. v. Clynes, 119 F.3d 607, 611-12 (8th Cir. 1997), cert. denied, 523 U.S. 1137 (1998)).  The DOE is not required "to pay for the cost of education . . . of a student with a disability at a private school or facility if the department made a free appropriate public education available to the student and the parent elected to place the student in a private school or facility."  Hawaii Administrative Rule § 8-56-51(a).[4]  The Hearings Officer concluded, and the Court affirms, that Defendants provided a FAPE to Student.  Therefore, the DOE is not obligated to pay for the private education costs Parents incurred when they transferred Student out of the public school system.

The Court also notes that even if Defendants had failed to provide a FAPE for Student, the cost of reimbursement may be reduced or denied if the parent did not (1) reject the most recent IEP, by expressing specific concerns about the program and the intent to remove the student from the public school; or (2) provide written notice of the student's removal ten days prior to withdrawing the student from the public school.  H.A.R. § 8-56-51(d)(1)(A-B).  As discussed, Parents did not reject the IEP at the September 18, 2003 meeting, (nor did they state that they

---

[4]  Hawaii Administrative Rule § 8-56-51 adopts the reimbursement requirements of the IDEA and the Department of Education regulations.  See 20 U.S.C. § 1412(a)(10); 34 C.F.R. § 300.403.

12

intended to remove Student from the school at that meeting).

Parents provided notice to the school of their intention to remove Student, but it was not written. Student was enrolled in her current private school placement in June 2004. In July 2004, Wendy Chong, Student Services Coordinator at Waipahu Intermediate School, contacted Parents and left a message inquiring about Student's placement for the 2004-2005 year. (Administrative Record, Hearing Transcript at 144:11-18). Mother left a return voice mail on August 2, 2004 stating that Student would be attending a private school. (Administrative Record, Hearing Transcript at 144:20-24). In an August 6, 2004 letter, Randell Dunn, Principal of Waipahu Intermediate School, informed Parents that all special education services provided by the DOE would be terminated immediately based on Parents' unilateral decision to enroll Student in a private school. (Administrative Record, Respondent's Exhibit 9). Parents did not respond to Dunn's letter. (Administrative Decision at 4). Because the Court finds that Plaintiffs are not entitled to reimbursement since the DOE provided Student with a FAPE, it is unnecessary to determine how the school's actual notice of the Student's removal affects Plaintiffs' right to reimbursement. For the same reason, the Court need not consider whether Plaintiffs were aware of the written notification requirement.

The DOE provided Student with a FAPE. When parents

remove a student from public school, where a FAPE was provided, the DOE has no obligation to pay for the private school costs. Accordingly, the Court affirms the Hearings Officer's conclusion that Parents had no right to reimbursement for their private school costs.

## CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiffs' Appeal of the Administrative Decision of the Hearings Officer. The Court concludes that Defendants provided a free and appropriate public education to the student.  Defendants were not required to provide special education services to address Student's mathematical abilities.  Furthermore, the parents ratified their child's September 18, 2003 Individualized Education Program.  The Court also concludes that Plaintiffs are not entitled to reimbursement for private school costs. Generally, individuals are not reimbursed for such costs when the school provides a free and appropriate public education to a student.  As this Order disposes of all outstanding matters in this case, the clerk of the court is ordered to enter judgment in favor of Defendants and close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 21, 2006.



_____
Alan C. Kay
Sr. United States District Judge

REBECCA B., et al. v. STATE OF HAWAII, DEPARTMENT OF EDUCATION, et al., CIV. NO. 05-00498 ACK/KSC, ORDER DENYING PLAINTIFFS' APPEAL OF HEARINGS OFFICER'S ADMINISTRATIVE DECISION.